UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    12-CR-142 (RRM)
        v.                   :
                            :    February 29, 2012
LOUIS DION,                  :
                            :    Brooklyn, New York
             Defendant.      :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        LORETTA LYNCH, ESQ.
                           UNITED STATES ATTORNEY
                           BY: STEPHEN MEYER, ESQ.
                           ASSISTANT U.S. ATTORNEY
                           271 Cadman Plaza East
                           Brooklyn, New York  11201


For the Defendant:         ALEXANDER SOUTHWELL, ESQ.




Audio Operator:


Court Transcriber:         ARIA SERVICES, INC.
                           c/o Elizabeth Barron
                           102 Sparrow Ridge Road
                           Carmel, NY 10512
                           (845) 260-1377


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1            THE CLERK:  Criminal cause for plea hearing,

2    United States v. Louis Dion, docket number 12-142.

3            Counsel, please state your appearances for the

4    record, starting with the government.

5            MR. MEYER:  Stephen Meyer for the United States.

6            MR. SOUTHWELL:  Alexander Southwell for the

7    defendant.  Good afternoon, your Honor.

8            THE COURT:  Good afternoon, counselors.

9            Good afternoon, Mr. Dion.

10           Mr. Southwell, I understand that your client is

11   prepared to waive indictment and plead guilty to an

12   information pursuant to a written plea agreement.

13           MR. SOUTHWELL:  Yes, your Honor, that's correct.

14           THE COURT:  Mr. Dion or Dion?

15           THE DEFENDANT:  Dion.

16           THE COURT:  Dion.  As you may know, you have a

17   constitutional right in any criminal case involving a felony

18   to be charged by indictment of a grand jury.  What that

19   means is, unless a grand jury finds by return of an

20   indictment that there is probable cause to believe that a

21   crime has been committed and that you committed it, this

22   criminal prosecution cannot proceed.  If you do not waive

23   indictment, the government would be required, in order to

24   proceed in a criminal matter against you, to present the

25   case to a grand jury and as it to indict you.

1          A grand jury is composed of at least 16 and not

2     more than 23 persons, and at least 12 grand jurors must find

3     that there's probable cause you've committed a crime before

4     you could be charged with a crime in an indictment.

5     Sometimes the grand jury might not indict.

6               Do you understand that?

7               THE DEFENDANT:  Yes, I do.

8               THE COURT:  If you waive indictment by a grand

9     jury, this case will proceed with a document called an

10    information signed by the U.S. attorney, just as though

11    you'd been indicted.

12              Have you discussed waiving your right to

13    indictment by the grand jury with your attorney?

14              THE DEFENDANT:  Yes, I have.

15              THE COURT:  Do you understand your right to

16    indictment by a grand jury?

17              THE DEFENDANT:  Yes.

18              THE COURT:  I have in my hand a document entitled

19    "waiver of indictment," and it states that you've been

20    accused of a crime to defraud the United States and you've

21    been advised of your rights.

22              Is this your signature on the line above your

23    name?

24              THE DEFENDANT:  Yes, it is.

25              THE COURT:  Have you received a copy of the

1    information in this case?

2                THE DEFENDANT:  Yes, I have, your Honor.

3                THE COURT:  In this information, you're charged

4    with having engaged in a scheme to defraud -- a conspiracy

5    to commit securities fraud.  I have in my hand a copy of the

6    information, in which it is stated that you engaged in a

7    scheme to defraud others -- you conspired to execute a

8    scheme to defraud others in connection with the sale of

9    common stock of two corporations, Sync2 Networks Corp., S--

10   y-n-c-2, the number 2, Networks Corp., as well as Siga, S-i-

11   g-a Resources, Inc.

12               This information states that you engaged in this

13   conspiracy between the time period of August 1st, 2009 and

14   December 1st, 2009, and you made -- in connection with the

15   conspiracy, you engaged in a scheme to defraud by making

16   false statements and engaged in travel in interstate

17   commerce.

18               In the preparatory paragraphs of the indictment,

19   the scheme that's alleged states that you engaged in

20   carefully masked promotion campaigns to others, without

21   revealing your interest in certain stocks.  You manipulated

22   the trading volume of the stock, conducted match trades and

23   paid undisclosed kickbacks to brokers and market makers, and

24   that you also engaged in transactions through nominee

25   entities to engage in the sale of the stocks described in

1    the information.

2            This scheme is loosely described as a "pump and

3    dump" scheme with respect to the shares of stock in Sync2

4    Networks Corp. as well as Siga Resources, Inc.

5            Do you understand the allegations set forth in the

6    information?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  Did you also review the overt acts

9    alleged in the information?  On page 6, there are six overt

10   acts in which you are alleged to have committed in

11   connection with the pump and dump scheme.

12           THE DEFENDANT:  Yes, I have.

13           THE COURT:  Did you discuss the charge in the

14   information with your attorney before waiving indictment?

15           THE DEFENDANT:  Yes, I have.

16           THE COURT:  Now, I understand that you intend to

17   plead guilty to the charge in the information.  As you may

18   know, your case has been assigned to Judge Mauskopf, and she

19   is the judge who will make the ultimate decision whether to

20   accept your guilty plea, and if she does, she will be the

21   judge who will sentence you.  You have the absolute right to

22   have Judge Mauskopf listen to your plea, and if you choose

23   to do so, that will be without any prejudice to you.

24           Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  I understand that Judge Mauskopf has

2   referred your guilty plea to me, and I have in my hand a

3   form entitled "consent to proceed before a United States

4   magistrate judge."

5          Did you review this consent form with your

6   attorney?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  Is this your signature on the line

9   above the word "defendant?"

10          THE DEFENDANT:  Yes, it is.

11          THE COURT:  Do you, as set forth in this consent,

12   give your consent voluntarily to having me hear your plea?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  Since this Court must be certain that

15   you understand your rights and the consequences of your

16   plea, I will explain certain matters to you and ask you

17   questions.  If I say anything you don't understand, please

18   say so and I will reword.

19          Is that clear?

20          THE DEFENDANT:  Yes.

21          THE COURT:  First, I'm going to ask you to take an

22   oath.

23          (Defendant is sworn.)

24          THE COURT:  Mr. Dion, you have just taken an oath

25   to tell the truth.

1          Do you understand that if you answer any of my

2    questions falsely, your answers could later be used against

3    you, in another criminal prosecution for perjury or for

4    making a false statement?

5               THE DEFENDANT:  Yes, I do understand.

6               THE COURT:  What is your full name?

7               THE DEFENDANT:  Louis Dennis Dion.

8               THE COURT:  How old are you?

9               THE DEFENDANT:  61.

10              THE COURT:  What schooling or education have you

11   had?

12              THE DEFENDANT:  High school.

13              THE COURT:  Are you presently or have you recently

14   been under the care of a doctor or psychiatrist?

15              THE DEFENDANT:  Well, not a psychiatrist but a

16   doctor.  I've seen one in the MDC, for example, but

17   nothing --

18              THE COURT:  Was it just a regular checkup?

19              THE DEFENDANT:  A general checkup, yes.

20              THE COURT:  Okay.  Have you been seeing a doctor

21   for treatment of any particular condition?

22              THE DEFENDANT:  No.

23              THE COURT:  Have you ever been hospitalized or

24   treated for any mental illness or addiction to drugs,

25   alcohol or any other substance?

1          THE DEFENDANT:  No, I have not.

2          THE COURT:  In the past 24 hours, have you taken

3    any pills, medicine or drugs of any kind or drunk any

4    alcoholic beverages?

5          THE DEFENDANT:  No, I have not.

6          THE COURT:  Is your mind clear today?

7          THE DEFENDANT:  Yes, it is.

8          THE COURT:  Do you understand the nature of these

9    proceedings?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  Mr. Southwell, have you discussed the

12   question of a guilty plea with your client?

13         MR. SOUTHWELL:  Yes, I have, your Honor.

14         THE COURT:  In your view, does he understand the

15   rights he would be waiving by pleading guilty?

16         MR. SOUTHWELL:  Yes, I believe he does.

17         THE COURT:  Is he capable of understanding the

18   nature of these proceedings?

19         MR. SOUTHWELL:  Yes.

20         THE COURT:  Do you have any doubts as to his

21   competency to proceed today?

22         MR. SOUTHWELL:  None whatsoever, your Honor.

23         THE COURT:  Have you advised him of the penalties

24   that can be imposed and discussed the applicable sentencing

25   considerations, including the sentencing guidelines?

1          MR. SOUTHWELL:  Yes, I have.

2          THE COURT:  Mr. Dion, have you had a full

3  opportunity to discuss your case with your attorney?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  Are you satisfied with your attorney

6  and the assistance he's given you thus far in this matter?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  I just want to confirm, have you fully

9  consulted with your attorney about the charge in the

10  information that you will be pleading guilty to?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Then I'm going to advise you of your

13  right to a trial and what rights you would be waiving by

14  pleading guilty to the charge in the information.

15          The first and most important thing you must

16  understand is that you have a right to plead not guilty to

17  the charges in the indictment and to persist in your plea.

18  Under the Constitution and laws of the United States, you

19  would then have a right to a speedy and public trial before

20  a jury, with the assistance of your attorney.  If you cannot

21  afford an attorney, the Court will appoint an attorney on

22  your behalf.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  You are presumed to be innocent and

1   would not have to prove you were innocent.  At trial, the

2   burden would be on the government to prove beyond a

3   reasonable doubt that you are guilty of the crime charged.

4   In order to prove you guilty of the crime charged, the

5   government would have to prove beyond a reasonable doubt

6   each and every element, each and every part of the charge.

7          So the government would first have to prove you

8   were engaged in a conspiracy, which is an agreement to

9   commit an unlawful act.  The government would have to prove

10  that you knowingly and wilfully entered into the conspiracy,

11  that the conspiracy existed between the dates alleged,

12  between August 1st, 2009 and December 1st, 2011, and that the

13  object of the conspiracy was to execute the scheme to

14  defraud in connection with the sale of the common stock we

15  discussed, by means of making false and fraudulent

16  representations, promises and money, in connection with the

17  purchase of stock.

18         The government would also have to prove an object

19  of the conspiracy was to travel in interstate and foreign

20  commerce through the use of the mails and facilities, with

21  the intent to facilitate -- to promote, manage, establish

22  and facilitate the promotion of the unlawful activity, and

23  more specifically, commercial bribery, in violation of New

24  York law and in violation of federal law.

25         Also, the government would have to prove that you

1   committed acts in furtherance of the conspiracy, and there

2   are six acts alleged in the information, including Overt Act

3   A:   That you discussed the scheme on August 31st, 2009 with a

4   coconspirator, and you also discussed the scheme with

5   another coconspirator on September 10th, 2009; that you

6   issued a press release on the date alleged, among other

7   acts.

8            Now, if the government fails to present sufficient

9   evidence on any part of the charge in the information, the

10  jury would have the duty to find you not guilty.

11           Do you understand that?

12           THE DEFENDANT:  Yes, I do.

13           THE COURT:  In the course of a trial, witnesses

14  for the government would have to come to court and testify

15  in your presence.  Your lawyer would have the right to

16  cross-examine the witnesses for the government and to object

17  to evidence offered by the government.  You also have the

18  right to offer testimony and other evidence in your behalf,

19  and to compel the attendance of witnesses.

20           Do you understand that?

21           THE DEFENDANT:  Yes, I do.

22           THE COURT:  Although you have the right to

23  testify, you cannot be compelled to testify and incriminate

24  yourself.  If you decided not to testify, the Court would

25  instruct the jury that they could not hold that against you.

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  If you plead guilty, I will ask you

4   questions about what you did, in order to satisfy myself

5   that you are guilty of the charge to which you seek to plead

6   guilty, and you will have to answer my questions and

7   acknowledge your guilt.  Thus, you will be giving up the

8   right that I've just described, that is the right not to say

9   anything that would show you are guilty of the crime with

10  which you're charged.

11         Do you understand that?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  If you plead guilty and the Court

14  accepts your guilty plea, you'll be giving up your right to

15  a trial and all the other rights I've just discussed.  There

16  will be no trial and the Court will simply enter a judgment

17  of guilty based on your plea.

18         Do you understand that?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  Are you willing to give up your right

21  to a trial and the other rights I've discussed with you?

22         THE DEFENDANT:  Yes, I am.

23         THE COURT:  I understand that you've entered into

24  a written agreement with respect to your guilty plea, and I

25  have in my hand an eleven-page document entitled "Plea

1    Agreement," which has been marked Court Exhibit 1.  Could

2    you please take a look at Court Exhibit 1?

3              Have you had an opportunity to read this written

4    plea agreement in its entirety?

5              THE DEFENDANT:  Yes, I have.

6              THE COURT:  Have you discussed each and every

7    provision of the plea agreement with your attorney?

8              THE DEFENDANT:  Yes, I have.

9              THE COURT:  Is that your signature on page 11, on

10   the signature line, above your name?

11             THE DEFENDANT:  Yes, it is.

12             THE COURT:  This plea agreement provides you that

13   will waive indictment and plead guilty to an information to

14   be filed, sets forth various sentencing considerations and

15   other terms with respect to your guilty plea.

16             Do you understand each and every provision of this

17   written plea agreement?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  Does the agreement as written fully

20   and accurately reflect your understanding of the agreement

21   that you've reached with the government?

22             THE DEFENDANT:  Yes, it does.

23             THE COURT:  Other than the promises contained in

24   this agreement, has anyone made you any promises that have

25   caused you to plead guilty?

1          THE DEFENDANT:  No.

2          THE COURT:  Has anyone made any promises to you as

3  to what your sentence will be?

4          THE DEFENDANT:  No.

5          THE COURT:  Then let me discuss with you the

6  consequences of pleading guilty.  The statute you are

7  accused of violating in the information provides for a term

8  of imprisonment of from zero to five years.

9          In determining what sentence to impose within the

10  statutory range, Judge Mauskopf will consider the guidelines

11  issued by the United States Sentencing Commission and the

12  other factors specified by Section 3553(a) of the United

13  States Criminal Code, in determining whether to impose a

14  sentence within the guideline range.  The other factors she

15  will consider include the nature and circumstances of the

16  crimes committed, your characteristics and criminal history,

17  and the public interest in your sentence.

18          Prior to sentencing, the Court will receive a

19  presentence report containing information about these

20  factors and the guidelines.  You and your lawyer will have

21  the opportunity to see that report and to speak on your

22  behalf at sentencing.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Have you and your attorney talked

1    about how the Sentencing Commission guidelines might apply

2    to your case?

3              THE DEFENDANT:  Yes, he has, or yes, we have, I'm

4    sorry.

5              THE COURT:  I see that the plea agreement does set

6    forth a guideline calculation in paragraph 2.  And at the

7    end of paragraph 2, you have agreed to stipulate to the

8    guideline calculation set forth in that paragraph, which

9    states that you would be subject to an adjusted offense

10   level of 23, and that would subject you to a range of

11   imprisonment from 46 to 57 months, assuming you fall within

12   criminal history category 1.

13             Do you understand that?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  I just want to confirm with the

16   attorneys that they agree with this guideline estimate.

17             MR. MEYER:  Yes, your Honor.

18             MR. SOUTHWELL:  Yes, your Honor.

19             THE COURT:  Keep in mind, notwithstanding the

20   agreement of the attorneys and your stipulation, the Court,

21   Judge Mauskopf will ultimately decide what the sentencing

22   guideline range will be.  It could be different, based on

23   facts obtained.  Until the presentence report is prepared

24   and the Court hears from you, your lawyer and the government

25   attorney at sentencing, we will not know with certainty what

1    the guidelines will be, whether or not Judge Mauskopf will

2    find grounds to depart from them, or whether or not she will

3    impose a non-guideline sentence.

4              Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Under the plea agreement, the

7    government has agreed not to take any position concerning

8    where within the guideline range as determined by the Court

9    your sentence should fall.

10             Do you understand, however, that any

11   recommendation made by you or your attorney, even if it's

12   not opposed by the government, is simply a recommendation

13   and could be rejected by the Court?

14             THE DEFENDANT:  Yes, I do understand.

15             THE COURT:  So if your sentence is higher than

16   recommended or expected, or the guideline estimates you've

17   heard are wrong, you will not be able to withdraw your

18   guilty plea.

19             Do you understand that?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  In addition to imprisonment, you may

22   be sentenced to supervised release.  Supervised release

23   means that after you're released from prison, your

24   activities will be supervised by the Probation Department,

25   and there may be many restrictions placed on your liberty,

1   such as travel limitations, requirements that you report

2   regularly to a probation officer, prohibitions on carrying

3   guns and the like.  If you are removed or deported from the

4   United States, which is a likely consequence, as we'll

5   discuss later, a condition of supervised release could be

6   that you not reenter the United States.

7           Do you understand the nature of supervised

8   release?

9           THE DEFENDANT:  Yes, I to.

10          THE COURT:  The statute you are accused of

11  violating provides for a supervised release term of up to

12  three years.  What's important to keep in mind is that if

13  you violate the conditions of release, you could be returned

14  to prison for up to two years, even if the violation occurs

15  close to the end of the supervised period.  That means that

16  if you don't follow the conditions of supervised release,

17  your prison term could be substantially lengthened.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  You could be also subject to a maximum

21  fine of the greater of $250,000 or twice the pecuniary gain

22  or loss.

23          Mr. Meyer, do you have any estimates on that

24  amount?

25          MR. MEYER:  Your Honor, at this time, the

1    government estimates that the loss amount is approximately

2    one million dollars.

3             THE COURT:  Okay.  So you could be subject to

4    twice that amount as a fine.  But the amount I guess at this

5    point will have to be determined, as well as the amount of

6    restitution, making up for the loss that you've caused to

7    others.  In addition, you will be subject to a mandatory

8    special assessment of $100.

9             And as set forth in paragraph 6 of the plea

10   agreement, you could also be subject to removal, since a

11   plea of guilty to the crime charged in the information could

12   result in serious immigration consequences.  If you are

13   removed from the United States, there is very little

14   likelihood that you would be able to obtain relief from

15   removal or be readmitted to the United States.

16            Do you understand that?

17            THE DEFENDANT:  Yes, I do.

18            THE COURT:  As the plea agreement also makes

19   clear, you have agreed to criminal forfeiture.

20            Has the forfeiture amount been paid at this point?

21            MR. MEYER:  No, your Honor.  It's my understanding

22   that he doesn't have the funds to pay it today, so interest

23   will accrue from today through his -- through the date that

24   it's paid.

25            THE COURT:  As set forth in the plea agreement,

1    you've agreed to a forfeiture of $50,000.  This is an amount

2    that could be in addition to any amounts imposed as a fine

3    or restitution.

4              Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  If, after you are sentenced, you or

7    your attorney think that the Court has not properly followed

8    the law in sentencing you, you ordinarily have the right to

9    appeal your sentence to a higher court.  However, under the

10   plea agreement, you have essentially waived your right of

11   appeal by agreeing that you will not file an appeal or

12   otherwise challenge your conviction or sentence, if you are

13   sentenced to a term of imprisonment of 60 months or less.

14             Do you understand that?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Do you have any questions you would

17   like to ask me about the charge, your rights or anything

18   else to this matter?

19             THE DEFENDANT:  No, I believe that's -- I'm fine,

20   thank you.

21             THE COURT:  Is everything clear to you?

22             THE DEFENDANT:  Yes, it is.

23             THE COURT:  Mr. Southwell, do you know of any

24   reason why your client should not enter a plea of guilty to

25   the charge?

1          MR. SOUTHWELL:  No, your Honor.

2          THE COURT:  Are you aware of any viable legal

3   defense?

4          Mr. SOUTHWELL:  No, your Honor.

5          THE COURT:  Mr. Dion, are you ready to plead?

6          THE DEFENDANT:  Yes, I am.

7          THE COURT:  How do you plead to the charge

8   contained in the information, guilty or not guilty?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Are you making your plea of guilty

11   voluntarily and of your own free will?

12          THE DEFENDANT:  Yes, I am.

13          THE COURT:  Has anyone threatened or forced you to

14   plead guilty?

15          THE DEFENDANT:  No.

16          THE COURT:  Other than the written plea agreement

17   marked Court Exhibit 1, has anyone made you any promise that

18   caused you to plead guilty?

19          THE DEFENDANT:  No.

20          THE COURT:  Has anyone made you any promise about

21   the sentence you will receive?

22          THE DEFENDANT:  No.

23          THE COURT:  Then I would like you to describe

24   briefly, in your own words, what you did in connection with

25   the crime charged.

1          MR. SOUTHWELL:  Your Honor, with the Court's

2    permission, with Mr. Dion, we prepared a short statement

3    that he'd like to read to you.

4          THE COURT:  That's fine.

5          THE DEFENDANT:  Okay, thank you.

6          Your Honor, from approximately August, 2009

7    through October, 2009, I agreed with at least one other

8    person to artificially the stock price of a company Sync2,

9    which traded on the NASDAQ Over-the Counter Exchange in the

10   United States.  We hoped to accomplish this in part by

11   hiring stock promoters to engage in mass promotion campaign,

12   to create market interest by predicting that the price of

13   the stock was about to increase dramatically, without

14   revealing that they were paid in stock.

15         When the promoters failed to perform and sought to

16   sell their shares in the market, my associates and I found

17   buyers for the stock at the inflated price, to keep the

18   stock price from falling on the sales -- to keep the stock

19   price stabilized.  Sorry about that.

20         In addition, in approximately November, 2011, I

21   agreed with at least one other person to artificially

22   manipulate the stock of a company called Siga Resources,

23   Inc., also traded on the Over-the-Counter Exchange in the

24   United States.

25         As part of that effort, I directed others to pay

1   kickbacks to an individual who at the time I believe

2   represented a group of brokers, in order to have those

3   brokers purchase stock in Siga Resources and thereby

4   manipulate the market.  On or about December 1st, 2011, I

5   traveled to New York in part to meet with an individual

6   concerning this.

7          Your Honor, I did these acts with the intent to

8   defraud, and I knew at the time that I engaged in this

9   securities fraud that what I was doing was wrong.  I'm

10  deeply sorry for my actions.

11         THE COURT:  Where in New York did you travel to?

12         THE DEFENDANT:  To Manhattan, I'm sorry,

13  Manhattan, downtown Manhattan.

14         THE COURT:  Okay.  Did any of your activities take

15  you to the Eastern District of New York --

16         THE DEFENDANT:  No.

17         THE COURT:  -- of the conspiracy?

18         MR. MEYER:  Your Honor, I believe the defendant is

19  prepared to waive venue.  We do have allegations of there

20  acts occurring within the Eastern District of New York.  But

21  just for these purposes, I think he has an agreement that he

22  would waive venue.

23         MR. SOUTHWELL:  That's right, your Honor.

24         THE COURT:  Do you understand what that means?

25         THE DEFENDANT:  Yes, I do.

1          THE COURT:  You're not objecting to prosecution in

2    this District.

3          THE DEFENDANT:  That's correct.

4          THE COURT:  And you agree that there were acts

5    that were committed in this District?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Did you commit the overt acts

8    described on page 6 of the information?

9          THE DEFENDANT:  Yes, I did.

10          THE COURT:  And that included wiring funds to a

11    bank account in Queens, New York?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Anything else?

14          MR. MEYER:  Your Honor, I just wanted to add one

15    thing.  The two stocks that are at issue in this case that

16    are named in the information, Siga Resources and Sync2

17    Networks Corporation, are both securities that are

18    registered under the -- with the Securities and Exchange

19    Commission under Section 12 of the Security Exchange Act.

20    So if we had to prove that at trial, we could.

21          THE COURT:  Do you agree that these are stocks

22    that are registered with the Securities and Exchange

23    Commission?

24          MR. SOUTHWELL:  We do agree with that, your Honor.

25          THE DEFENDANT:  Yes.

1          MR. MEYER:  Nothing further from the government,

2    your Honor.

3          THE COURT:  Then based on the information given to

4    me, I find that Mr. Dion is acting voluntarily, that he

5    fully understands the charge, his rights and the

6    consequences of his plea, and that there is a factual basis

7    for the plea.  I therefore recommend to Judge Mauskopf to

8    accept his plea of guilty to the one-count information in

9    this matter.

10         Has there been a date set for sentencing?

11         THE CLERK:  Sentencing set for March 20th, 2012 at

12    3:30 p.m.

13         THE COURT:  I understand this is Mr. Dion's first

14    appearance in this Court?

15         MR. MEYER:  No, your Honor, he appeared

16    previously.  He was arraigned on a complaint.

17         THE COURT:  Okay, fine.

18         MR. SOUTHWELL:  Your Honor, just one additional

19    request, and I don't know whether it's merely a formality at

20    this time.  We wanted to request expedited sentencing.  I

21    believe that's been conveyed to Judge Mauskopf, which is why

22    we have the date that's set.

23         I just wanted to make that clear, that we will be

24    requesting that of the Court.  I understand the government

25    has no objection.

1          MR. MEYER:  That's correct.

2          THE COURT:  Just alert the Probation Department to

3   expedite preparation of the presentence report.

4          MR. SOUTHWELL:  Okay, thank you, your Honor.

5          THE COURT:  We'll notify them, too.

6          MR. SOUTHWELL:  In addition to the plea agreement,

7   we've had discussions with the government about a request

8   for international prison transfer that Mr. Dion will likely

9   be making.  And I understand that the government, based on

10  the information that it has today, although not willing to

11  put any agreement in place and not willing to agree by its

12  terms, as of the information today, has no objection to that

13  request.

14         MR. MEYER:  Just to clarify.  Your Honor, the

15  office of the U.S. attorney's office in the Eastern District

16  of New York, based on all the information we have now, has

17  no objection to an international prison transfer.  However,

18  as we've discussed with defense counsel, the ultimate

19  decision is not made by our office, it's made by the

20  Department of Justice and MDC.

21         So, therefore, we expect that the Department of

22  Justice will seek our input in that regard, and to the

23  extent that they seek our input, we have no objection to an

24  international prison transfer.

25         MR. SOUTHWELL:  That's right, your Honor.  I just

1   wanted to have that on the record.  Thank you.

2           THE COURT:  Okay, so ordered.

3           MR. MEYER:  Thank you, your Honor.

4           MR. SOUTHWELL:  Thank you, your Honor.

5                   * * * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19  from the electronic sound recording of the proceedings in

20  the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                        March 9, 2012